IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY LEWIS, #295211                              *
     Petitioner,
 v.                                          *    CIVIL ACTION NO. DKC-05-2177

NANCY ROUSE, WARDEN and                          *
THE ATTORNEY GENERAL OF THE
  STATE OF MARYLAND                    *
     Respondents.
                                                 ***

## MEMORANDUM

Now before the court is a habeas corpus petition filed by Gary Lewis (Paper No. 1); the

State's Answer (Paper No. 15); and Petitioner's Reply thereto.  (Paper No. 19).  After review of

these documents, the court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing*

*Section 2254 Cases in the United States District Courts*.  For the reasons to follow, the Petition will

be denied and dismissed with prejudice.

## Procedural History

On September 17, 1999, Petitioner was charged in the Circuit Court for Caroline County.

Paper No. 15, Ex. 1.  The case proceeded to trial on  May 30, 2000, as to counts of first degree

murder, second degree murder, manslaughter, first and second degree assault, and carrying a

dangerous weapon with intent to injure.[1]  *Id*., Exs. 1 & 5.  On June 1, 2000, Petitioner was found

guilty of second degree murder and carrying a dangerous weapon with intent to injure.  *Id*., Ex. 1

& 7.  He was acquitted of first degree murder.  *Id*.  On June 19, 2000, Circuit Court Judge William

S. Horne sentenced Petitioner to thirty years on the second degree murder count and three years on

---

[1] The attempted first and second degree murder counts were nol prossed by the state.   Paper No. 15,
Exs. 1; Ex. 5 at 19.

the weapon offense, which was merged into the murder count for purposes of sentencing. Paper No. 15, Ex. 1 & 8.

On direct appeal, Petitioner raised the following grounds: (1) the trial judge erred in admitting prejudicial hearsay under the doctrine of verbal completeness; (2) the trial judge erred in failing to instruct the jury than an individual who arms himself in anticipation of an attack does not lose the right to claim that he acted in self-defense; (3) the state failed to prove beyond a reasonable doubt the absence of self-defense; and (4) the trial judge erred in precluding cross-examination of the medical examiner on an issue relevant to the Petitioner's intent to kill. Paper No. 15, Ex. 9. On August 8, 2001, the Court of Special Appeals of Maryland affirmed the convictions. *Id.*, Ex. 11. In affirming the judgment, the Court of Special Appeals recited the following facts adduced at trial:

> On August 29, 1999, Todd Bennett was fatally stabbed during a party at the home of Chris Yingling on Central Avenue in Ridgley, Maryland. A number of people saw the victim and Gary Lewis, the appellant, at the party. The principal witness, Timothy Cecil, testified that he was friendly with both men. He described an argument that occurred on the front porch of the house at approximately midnight that involved Bennett asking appellant why he had stolen Bennett's bicycle. Appellant denied the accusation and said he was "going home and get a gun." Cecil left and, when he was three blocks away he heard police sirens, came back, and saw Bennett lying in the yard.

> A number of witnesses stated that Bennett appeared to be intoxicated, which was confirmed by tests administered in the hospital. Bennett, who was 6'3" tall and weighed 227 pounds, died from an abdominal stab wound which went through the abdominal wall and perforated the aorta, the largest blood vessel in the body. In non-scientific terms, Bennett bled to death.

> Chris Yingling testified that when he came out of the house he saw appellant jumping up and down beside Bennett and yelling, "He hit me with a bottle." Appellant picked up a knife, according to Yingling, and ran across the street to his house. Yingling described the knife as being six to nine inches overall.

> Appellant testified that he was 5'8" tall and weighed 140 pounds. He said that Bennett had hit him in the head with a whiskey bottle and he went home out of anger and hurt and got a knife. He said Bennett "came over after me again" when he

returned to the party with the knife and after that "everything happened so fast, the next thing I knew he was lying on the ground." Appellant said he told someone to call 911 and he went across the street to his home.

The day after the killing, appellant gave a somewhat different version of the affair. In the second statement, appellant said he was sitting on his front steps with the knife when Bennett called him to return to the party, saying that he was sorry for what transpired earlier. When appellant accepted the invitation to return, Bennett allegedly grabbed him by the neck, and he slashed at Bennett to free himself. Thus, the jury had two accounts by appellant: one that he retaliated in anger to being struck by a bottle, and the other that he was lured into returning to the scene and acted in self-defense to escape from the much larger opponent.

Paper No. 15, Ex. 11 at 1-3.

Petitioner filed a petition for writ of certiorari in the Court of Appeals of Maryland, raising grounds regarding the admission of the prejudicial hearsay statement and the trial court's instruction on the right to self-defense. *Id.*, Exs. 12-13. The petition was denied on December 7, 2001. *Id.*, Exs. 12-14.

On November 12, 2002, Petitioner filed for post-conviction relief in the Circuit Court for Caroline County. *Id.*, Ex. 15. Supplemental post-conviction petitions were filed. *Id.*, Exs. 16-17. The cumulative grounds alleged that: (1) counsel was ineffective;[2] (2) there was prosecutorial

---

[2]     The original *pro se* post-conviction petition raised the following ineffective assistance grounds: (1) counsel failed to request an instruction on Petitioner's legitimate right to arm himself in anticipation of an attack; (2) counsel did not effectively cross-examine Sgt. Merlin Evans concerning his knowledge of Petitioner being attacked first by the victim; (3) counsel failed to prepare Petitioner to testify and did not bring out Petitioner's prior convictions on direct examination; and (4) counsel failed to object to comments made by the prosecutor during closing arguments regarding Petitioner tailoring his testimony to fit that of other witnesses. Paper No. 15, Ex. 15. In a counseled petition, Petitioner reasserted his Sixth Amendment claims that counsel failed to request a jury instruction that Petitioner, by arming himself in anticipation of an attack, did not then forfeit the claim of self-defense. *Id.*, Ex. 16. Finally, Petitioner filed a second *pro se* petition, raising the following ineffective assistance grounds: (1) counsel did not prepare an adequate defense; (2) counsel only met with Petitioner twice prior to trial; (3) counsel withdrew the motion to suppress and could not recall why he "dropped" the motion; (4) counsel effectively agreed to accept "whatever the state of Maryland wanted to bring to trial;" (5) but for counsel's withdrawal of the motion to suppress, he could have challenged (a) the improper arrest warrant, (b) the planned inclusion of the inflammatory photograph of the supposed weapon, (c) the various statements given by witnesses, and (d) the voluntariness of Petitioner's
(continued...)

misconduct during closing argument when the State's Attorney argued that Petitioner may have fabricated his testimony to match witness testimony; and  (3)  trial court error.[3]  *Id.*, Exs. 15-17. After a December 23, 2003 hearing was held,  Circuit Court Judge J. Frederick Price denied post-conviction relief on January 16, 2004.  *Id.*, Ex. 18.  Petitioner's applications for leave to appeal were denied by the Court of Special Appeals on September 8, 2004.[4]  *Id.*, Exs. 19-21.

Petitioner raises the following claims in support of his § 2254 Petition:

(1)     He was denied a fair trial when the trial court admitted into evidence, under the doctrine of "verbal completeness," the entire statement that State's witness Thomas Schulyer[5] provided to an investigator of the Office of the Public Defender;[6]

---

[2](...continued)
statements; (6) counsel failed to familiarize himself with the case; (7) counsel did not challenge the state's toxicology reports; (8) counsel failed to present evidence of the victim's history of violence and related criminal behavior; (9) counsel failed to conduct "crucial" cross-examination of the state's forensic expert consistent with his claim of self-defense; (10) counsel failed to properly challenge the jury instruction in regard to an individual who arms himself in anticipation of an attack does not lose the right to claim he acted in self-defense; and (11) counsel failed to properly advise Petitioner of the possible consequence of taking the witness stand.  Paper No. 15, Ex. 17.

[3]     Petitioner's trial court error grounds re-assert three of the four claims raised on direct appeal.  Paper No. 15, Exs. 9 & 17.

[4]     Petitioner unsuccessfully attempted to reopen his post-conviction proceedings.  Paper No. 15, Exs. 22-27

[5]     Schulyer was a state witness who lived in an apartment building next door to the home of Chris Yingling.  He testified as to: his familiarity with the victim and Petitioner; what he heard and observed on the porch of Yingling's home; his contact with the victim on the night of the murder and the victim's intoxication; the commotion he heard later that night; and his seeing the body of the victim lying on the sidewalk.  Paper No. 15, Ex. 5 at 111-125.

[6]     Thomas Harris, the investigator for the Office the Public Defender, testified on behalf of Petitioner with regard to his October, 1999 interview with Thomas Schulyer.  Paper No. 15, Ex. 6 at 130.   His testimony regarding Schulyer's statements was seemingly brought in to impeach Schulyer's credibility and, arguably, to show his bias against Petitioner.  *Id.*, Ex. 6 at 132 & 288.  On cross-examination, however, the State was permitted to enter into evidence Harris's investigative report of all statements made by Schulyer, which apparently included Schulyer's comments that Petitioner was a drug addict, a thief, and HIV positive. *Id.*, Ex. 6 at 132-35.

(2)     The post-conviction court's rulings on his ineffective assistance grounds was objectively unreasonable and contrary to clearly established Supreme Court precedent; and

(3)     Trial counsel failed to request a vital self-defense jury instruction "on the right to arm oneself in anticipation of an attack."

Paper No. 1 at Attachments.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).  Further, Petitioner no longer has any state direct review or collateral review remedies available to him with respect to the claim raised in this court.  For this reason, his claim will be considered exhausted for the purpose of federal habeas corpus review.

### Procedural Default

Respondents argue that Petitioner's first claim is procedurally defaulted because it was not argued as a constitutional claim on direct appeal or in post-conviction proceedings.  Paper No. 15 at 15-16.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post conviction relief).  A procedural default

5

also may occur where a state court declines "to consider the merits [of a claim] on the basis of an

adequate and independent state procedural rule."  *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir.

1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a  habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. *Id*. at 735 n.1."

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).   To exhaust available state procedures, a

petitioner must have presented both the facts and the nature of the alleged violation to the state

courts.  It is not enough to couch an argument in state law grounds.  And, procedural default can be

found when it would be futile to attempt to present a constitutional claim belatedly:

> *Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (per curiam) (holding that argument to state supreme court that an evidentiary ruling by trial court violated state law was insufficient to exhaust claim that the ruling constituted a violation of a federal constitutional right, and rejecting the argument that similarity of claims is adequate to exhaust); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.) (explaining that in order for federal claim to be exhausted, its substance must be presented to the highest state court), *cert. denied* , 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997); *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir.1994) (noting that exhaustion requires that petitioner do more than apprise state court of the facts; he must "explain how those alleged events establish a violation of his constitutional rights" ); *id*. at 995 (explaining that exhaustion requires "more than scatter[ing] some makeshift needles in the haystack of the state court record" (internal quotation marks omitted)). Because presentation of these claims to the state court at this juncture would be fruitless, they properly are considered to be procedurally barred. *See George v. Angelone*, 100 F.3d 353, 363 (4th Cir.1996) ( "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture." ), *cert. denied* , 519 U.S. 1103, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997).

*Mackall v. Angelone*,  131 F.3d 442, 450 (4th Cir.  1997)(en banc).

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See id.*; *Bassette v. Thompson*, 915 F.2d 932, 936-37 (4th Cir. 1990); *Collier v. Jones*, 910 F.2d 770, 772-73 (11th Cir. 1990).

On direct appeal, Petitioner argued that the trial court erred under state law in admitting prejudicial hearsay under the doctrine of verbal completeness. Paper No. 15, Ex. 9 at 13. In addition, on post-conviction review, Petitioner attacked the trial court's admission of the same evidence, but not as a constitutional violation. *Id.*, Ex. 17. The record plainly shows that Petitioner did not present this ground as a constitutional due process (fair trial) claim before the state courts. Consequently, the undersigned finds that this ground is defaulted.

The court's inquiry does not end there. Even where a claim has been procedurally defaulted, this court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id.* at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in

the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986);

*Schlup*, *supra*. To meet this standard a petitioner must show that it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt. *See Schlup*, 513

U.S. at 327.[7]

> *Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent
> person is extremely rare....To be credible, such a claim requires petitioner to support
> his allegations of constitutional error with new reliable evidence--whether it be
> exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical
> evidence--that was not presented at trial.

*Id*. at 323; *see also House v. Bell*, 126 S.Ct. 2064, 2077-78 (2006).

Petitioner was afforded an opportunity to demonstrate the existence of cause for his failure

to raise the aforementioned claim in the state courts and the prejudice resulting from this failure.

Paper No. 16. He seemingly acknowledges that the claim was raised as a state court trial error

claim, but maintains that a reasonable jurist could find that a constitutional violation did occur and

his right to a fair trial must be examined under Fourteenth Amendment standards. Paper No. 19 at

4. He further argues that the court should consider the defaulted claim in order to prevent a

fundamental miscarriage of justice, *i.e.*, his actual innocence of second degree murder. *Id*. at 5-6.

The undersigned finds that Petitioner has presented no evidence, nor suggested that any exists,

---

[7]     Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate
constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When]
a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal
habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.;
*see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). A petitioner who wishes to use a claim of actual
innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a
preponderance of the evidence that a reasonable juror could not have convicted petitioner in light of the new
evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

which could satisfy the difficult standard set forth in *Schlup*.  His procedurally defaulted claim is, therefore, foreclosed from federal habeas review.[8]

### 28 U.S.C. § 2254 Jurisdiction

As presented to this court, Petitioner's second ground apparently takes issue with the manner in which the post-conviction judge ruled on his various grounds.   Paper No. 1.  He cites to the following language set out in the post-conviction opinion:

> Generally, the Court finds that Petitioner has failed to meet his burden of proof - provide the Court with clear and convincing evidence to substantiate his allegations, which include ineffective assistance of counsel, prosecutorial misconduct, and error by the trial judge.  Therefore, without sufficient evidence, Petitioner's Petition for Post Conviction Relief must, and does, hereby fail.

*See* Paper No. 18 at 1.

Petitioner claims that the post-conviction court's rulings on his ineffective assistance grounds were objectively unreasonable and contrary to clearly established Supreme Court precedent.  Insofar as Petitioner may be seeking § 2254 relief with regard to the inactions of the state post-conviction court, such a claim implicates the threshold issue of this court's subject matter jurisdiction under 28 U.S.C. § 2254.  Errors or defects in state post-conviction proceedings do not raise constitutional questions cognizable in federal habeas corpus proceedings.  *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Williams-Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir. 1990); *Kenley v.*

---

[8]    In denying this claim on direct appeal, the Court of Special Appeals of Maryland found that while the circumstances evince a "classic example" of when not to invoke the doctrine of verbal completeness under Maryland Rule 106 and the "Rule does not provide for the admission of otherwise inadmissible evidence," the admission of Schuyler's entire statement constituted harmless error as the "credibility of Schuyler had no bearing on the charge of murder and the state's verbal completeness approach served only to divert the attention of the jury away from the single important issue [of whether the stabbing was in self-defense]." Paper No. 15, Ex. 11 at 3-6.

*Bowersox*, 228 F.3d 934, 938-39 (8th Cir. 2000); *Zamora v. Pierson*, 158 F.Supp.2d 830, 836 (N.D. Ill. 2001).[9]

### Petitioner's Sixth Amendment Claim

### 28 U.S.C. § 2254 Standard of Review

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[10]  Section 2254(d) also requires federal courts to give great deference to a state court's

---

[9]  Petitioner focuses on the "sufficient evidence" and "clear and convincing evidence" language used in the post-conviction ruling to argue that Judge Price misapplied *Strickland v. Washington*, 466 U.S. 668 (1984) to his numerous Sixth Amendment claims.  Paper No. 19.  Upon review of Judge Price's decision, however, it is clear that the post-conviction court properly analyzed Petitioner's multiple ineffective assistance grounds under *Strickland*.  Paper No. 15, Ex. 18.

[10]  Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el*
(continued...)

factual findings.  *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).   Section 2254(e)(1)

provides that a determination of a factual issue made by a state court shall be presumed to be correct

absent clear and convincing evidence to the contrary.   The applicant has the burden of rebutting the

presumption of correctness.  A decision adjudicated on the merits in a state court and based on a

factual determination will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state court proceeding.   *See Miller-El v. Cockrell*, 537 U.S.

322, 340 (2003).  With these standards in mind, the court will address the merits of Petitioner's

ineffective assistance claim.

### Analysis

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466

U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell

below an objective standard of reasonableness," and (2) that counsel's deficient performance

prejudiced the defendant.  *Id*. at 688, 692.  "The benchmark for judging any claim of ineffectiveness

must be whether counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." *Id*. at 686.  The ultimate focus of

the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being

challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of

reasonableness, a court must consider "whether counsel's assistance was reasonable considering all

the circumstances." *Id*. at 688.   In its analysis, a court must be "highly deferential," and "must

[10](...continued)
*v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).   A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable.  *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.   Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner claims that trial counsel Harry Walsh failed to request a vital self-defense jury instruction on the right to arm oneself in anticipation of an attack.  The precise ground was raised on post-conviction review.   In rejecting the claim, Judge Price stated:

> Petitioner charges that his Trial Counsel, Harry M. Walsh, Jr., failed to request a jury instruction that would have advised the jury that Petitioner had a legitimate right to arm himself in anticipation of attack by the victim, and that so doing did not amount to a waiver of his right to self-defense.   Petitioner avers that this failure may have allowed the jury to attach a negative inference to the fact that Petitioner did arm himself.
>
> While Petitioner's counsel, Mr. Smith, made a convincing argument in his *Supplemental Petition and Memorandum of Law*, this Court is persuaded by dicta in the decision of the Court of Special Appeals, which stated in its unreported opinion, *Lewis v. State*, No. 1531 (Md. App. Sept. 2000), that, "Appellant's claim is not preserved, as he did not request an instruction at the conclusion of trial."  *Id*. at 6. Moreover, the Court of Special Appeals noted that such an instruction was not warranted, because Petitioner did not simply arm himself in anticipation of attack by

12

the victim, rather, Petitioner "....was the aggressor who left a place of safety, armed himself, and sought out Bennett (the victim)...." *Id*. at 6.   Therefore, even if Petitioner satisfied the first prong of *Strickland*, the second prong is not met.

Paper No. 15, Ex. 18 at 3.

The trial record supports the conclusion that Petitioner did not arm himself with the knife in anticipation of an attack by the victim.  Rather, Petitioner left the victim at 211 Central Avenue and went to his place of residence, where he obtained a kitchen knife, armed himself, and *returned* to the Central Avenue address to meet or seek out the victim.  Under these circumstances, Mr. Walsh's failure to request the instruction does not constitute deficient performance.  Moreover, as correctly noted by Judge Price, given the evidence presented before the jury, there is no reason to believe that the jury verdict would have been different if such an instruction had been requested. Because the evidence did not support the instruction, it would not have been given.  No deficient performance and/or prejudice has been demonstrated.   The court therefore finds that Petitioner is not entitled to relief on the basis of his claim and sees no basis to overturn Judge Price's decision. *See* 28 U.S.C. § 2254(d).

## <u>Conclusion</u>

In light of the rulings of the court, the instant petition for habeas corpus relief will be denied, and this case will be dismissed by separate order.


Date:    5/18/07                            /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge